PHELAN and others, Respondents, vs. FITZPATRICK, imp., Appellant.

*January 13 — January 31, 1893.*

*Equitable mortgage: Limitation of actions: Redemption: Payment: Estoppel: Interest: Judgment.*

1. F., having an interest in mortgaged premises and a right to redeem, procured one P. to advance money to bid in the property on the foreclosure sale and take title thereto, with the understanding that

Phelan and others vs. Fitzpatrick.

he should reconvey to her upon repayment of the money so advanced. *Held*, that the transaction was in equity a mortgage.

2. The possession of F., after such transaction, was subordinate to the rights of P. as holder of the legal title, and in no sense adverse.

3. The cause of action to foreclose such equitable mortgage did not accrue until after the execution and delivery of the sheriff's deed to P.

4. There having been no denial that the relation of mortgagor and mortgagee existed between the parties, the action to foreclose such equitable mortgage is not barred after ten years under subd. 4, sec. 4221, R. S., nor after twenty years under subd. 2, sec. 4220.

5. The legal title in such case is in the equitable mortgagee until redemption, and the mortgagor cannot redeem without repaying the amount advanced, even though an action for the debt is barred by the statute of limitations.

6. The mortgagor, F., presented a claim against the estate of the mortgagee, P., for board, etc., furnished to him in his life time, and after litigation recovered a certain sum thereon, which was paid to her. *Held*, that she could not afterwards claim that the debt secured by the mortgage was paid by such board, etc.

7. The relation of debtor and creditor existed between F. and P. as to the amount advanced by the latter, and, no time having been specified within which such amount should be repaid, it was in effect payable on demand and would bear interest.

8. The personal liability of F. to repay such amount is subject to the six years' statute of limitations (sec. 4222, R. S.); so that upon foreclosure of the mortgage after the six years had run there could be no personal judgment for deficiency.

9. After the six years had run, F. wrote to the attorneys of the successors to P.'s interest: "I have been informed that the rate of interest is only seven per cent., . . . and when they are ready to take that I will pay them the principal and interest; but everybody knows I own the land and that P.'s claim on it for money I borrowed of him was paid long ago. Still I suppose I will have to pay it over again. . . . Whenever they get the papers ready, I will get the money." *Held*, not a sufficient promise of payment to remove the bar of the statute.

10. The judgment for foreclosure of the mortgage should provide for a sale of the land, but should also provide that upon payment by the mortgagor the legal title should be conveyed to or vested in her.

APPEAL from the Circuit Court for *Iowa* County.

This is an action to foreclose an equitable mortgage upon

certain premises described in plaintiffs' complaint; and the facts are, in substance, that on July 20, 1870, Thomas Williams recovered against *Bridget Fitzpatrick*, widow and one of the administrators of Patrick Fitzpatrick, deceased, and his heirs at law therein named, judgment of foreclosure against the real estate in question, which was to be sold by the sheriff September 15, 1870.    One Martin Phelan agreed with said *Bridget Fitzpatrick* to bid in the real estate described in the judgment, and pay the amount thereof, take a certificate of·sale, and procure a deed of the lands thereon from the sheriff, for the use and benefit of said *Bridget Fitzpatrick;* and it was then agreed that she would pay to said Phelan such sum as he should pay in procuring such deed, and when such payment was made the said Phelan should make and deliver to her a deed of said premises, and in the mean time she was to have the use and possession thereof.    Accordingly Phelan bid in the premises for $471, and on the 17th of November, 1871, the premises not having been redeemed, Phelan procured a sheriff's deed thereof.    No particular time was fixed within which he was to be repaid.    The defendant *Bridget Fitzpatrick* has had and held possession of the premises ever since, except that two portions thereof were sold and conveyed by Phelan, by the direction and approval of *Bridget Fitzpatrick*, she receiving the purchase money,— some $440.    The last of said sales was made November 3, 1879.

Phelan died intestate December 10, 1880.    June 10, 1884, his administrator *de bonis non* filed his final account, and the residue of the estate was assigned to such of the plaintiffs in this action as are heirs at law and distributees of said Martin Phelan.    The claim and equitable mortgage held by said Phelan, now in question, was not inventoried or collected.    The county court assigned and set over to the plaintiffs, heirs at law of said Phelan, all of the real estate, except one forty acres, in respect to which no order

or decree was made. Before this action was commenced, the plaintiff *B. Henry Lampe* was appointed administrator *de bonis non* of said estate, and qualified; and he was guardian of one of the plaintiffs, an infant, and of another, an insane person. *Bridget Fitzpatrick* never paid the said sum of $471, or any part thereof or interest thereon; and the administrator *de bonis non* joins with said heirs at law and distributees of Martin Phelan in claiming judgment of foreclosure and sale of the premises remaining unsold to satisfy said $471 and interest, and asking for a judgment for any deficiency.

The defendant, by way of counterclaim, admits the borrowing of the $471 with which the lands in question were purchased at the sheriff's sale to Martin Phelan, and that it was then agreed between them that whenever said sum was paid the lands in the complaint were to be hers, and claiming that Martin Phelan thereafter boarded with her almost continually until his death, and that he had been injured in the mines, and his limbs were in a badly injured and diseased condition, and that she and her family waited upon him and attended to him, and that her services so rendered were worth the sum of $600 over and above his board; that he never had paid the same. She alleged that the cause of action set out in the complaint had been fully paid; that it did not accrue at any time within ten years next before the commencement of this action, nor at any time within twenty years, and she claimed the benefit of the six, ten, and twenty years statutes of limitations as defenses.

The plaintiffs, in reply to the counterclaim, insisted on the statute of limitations of six years as a defense thereto, and, further, that the defendant *Bridget Fitzpatrick* presented a claim against the estate of the said Martin Phelan for the same identical matters and claims embraced in the counterclaim, with others, and that after considerable liti-

gation judgment was rendered in her favor for $944.95, which was paid her; and insisted on the judgment in that matter as a bar to the counterclaim.

The plaintiffs introduced in evidence two letters written by *Mrs. Fitzpatrick* to their attorney dated March 31, 1889, and April 30, 1890, respectively, upon which they relied to show a promise in writing on her part to pay the $471 and interest. In one of these letters she says: "I have been informed that the rate of interest is only seven per cent., and that they cannot get any more, and when they are ready to take that I will pay them the principal and interest; but everybody knows I own the land and that Martin Phelan's claim on it for money I borrowed of him was paid long ago. Still, I suppose I will have to pay it over again. The people tell me I will only have to pay seven per cent. Whenever they get the papers ready, I will get the money." In the other she says: "I will settle with them as soon as they will make everything satisfactory to me, as I heard from Dick, and he don't want any law about it; and he is coming down right soon, and we will have everything settled up, as I want to know the least interest they will take." The defendant *Mrs. Fitzpatrick* testified that Martin Phelan bid the land in for her for $471, with his money. "That money was to be paid to him whenever I got ready, at any time. There was no certain time mentioned. I didn't sign any writing showing that I owed him this money. I gave him no security unless it was the land. He was to hold the land as security. When I paid him this money, he was to redeem the land to me." No evidence of payment was offered on behalf of defendant, except as to the matters embraced in her alleged counterclaim, which the court held had been barred by the adjudication in the matter of the estate of Martin Phelan upon her claim filed therein.

The circuit court held that the deed in question was an

equitable mortgage on the premises, and found the facts to be substantially as stated above, and held that the defendant *Bridget Fitzpatrick* was estopped to recover for the services pleaded as a counterclaim, and gave judgment of foreclosure, as prayed, for the amount of $471 and interest, and against the defendant *Bridget Fitzpatrick* for any deficiency existing after the sale. The court gave the defendant the right to elect whether the judgment should be a strict foreclosure, or a judgment of foreclosure and sale, and, in default of her election, that the plaintiff might elect which of said judgments should be entered. The defendant having failed to elect, the plaintiff entered judgment as above stated, from which the defendant *Bridget Fitzpatrick* has appealed, alleging various exceptions to the finding,— among others, to that part granting judgment against her for deficiency, and because the court did not pass upon the defenses of the statute of limitations pleaded by her, and for that the court held that she was barred from maintaining the claim set out in her answer by way of counterclaim. The judgment does not make any provision for vesting the title to the premises affected by it in the defendant *Bridget Fitzpatrick* in case she shall pay the amount found due, with costs, or for passing the legal title from the heirs of Martin Phelan to her upon any terms or upon any contingency whatever.

For the appellant there were briefs by *J. P. Smelker* and *Reese & Carter*, and oral argument by *Mr. Smelker*. They contended, *inter alia*, that the plaintiffs had been guilty of laches which in equity would bar the action, independent of the statute of limitations. *Sheldon v. Rockwell*, 9 Wis. 166; *Coon v. Seymour*, 71 id. 340, 345. If the claim was not barred by the statute of limitations, still no interest should be allowed upon it until action brought. *Marsh v. Fraser*, 37 Wis. 149; *Lusk v. Smith*, 21 id. 28; *Tucker v. Grover*, 60 id. 240, 245; *Hewitt v. John Week L. Co.* 77 id.

548, 555; *Hanley v. Crowe,* 3 N. Y. Supp. 154; *Wolff v. Matthews,* 98 Mo. 246; *Edwards v. Dargan,* 30 S. C. 177; *Robertson v. Mowell,* 66 Md. 565. No agreement was shown by which appellant bound herself to pay the money advanced by Phelan, and no covenant of payment could be implied. The mortgagee in such case could not have a personal action to recover the money. R. S. sec. 2204; *Musgat v. Pumpelly,* 46 Wis. 666; *Von Campe v. Chicago,* 140 Ill. 361; *Van Brunt v. Mismer,* 8 Minn. 232. The personal liability, if any, is extinguished by the statute of limitations, and no judgment for deficiency can be rendered. *Wiswell v. Baxter,* 20 Wis. 680; *Cerney v. Pawlot,* 66 id. 262, 268; *Bishop v. Douglass,* 25 id. 696, 701; *Slingerland v. Sherer,* 46 Minn. 422. If the six years statute does not apply, the limitation of ten years prescribed by subd. 4, sec. 4221, R. S., is applicable; and if that limitation does not apply to this cause of action, it certainly cannot be placed upon any better footing than a mortgage under seal, and must come under subd. 2, sec. 4220; 2 Jones, Mortgages, sec. 1192; *Leonard v. Binford,* 122 Ind. 200; *Whipple v. Barnes,* 21 Wis. 327; *Jacobs v. Spalding,* 71 id. 177; *Wiswell v. Baxter,* 20 id. 680.

*John F. Grace* and *J. M. Smith,* for the respondents.

PINNEY, J. 1. The appellant, *Bridget Fitzpatrick,* had sufficient interest in the mortgaged premises adjudged to be sold in the suit of Thomas Williams against *Bridget Fitzpatrick* and the heirs at law of Patrick Fitzpatrick, deceased, to entitle her to redeem the mortgaged premises and to make such arrangement as would best protect her interest therein. She accordingly entered into the arrangement with Martin Phelan by which he was to purchase the premises at the foreclosure sale under that judgment, and acquire title thereto, and convey the same to her upon request, when she might get ready to pay it, there being no certain

time mentioned when the money was to be repaid. In this manner he· acquired the absolute title to the premises in question, and, but for the nature of the transaction between himself and *Bridget Fitzpatrick*, he might have ejected her from the premises at once, upon obtaining a sheriff's deed. But it is plain that the legal effect of the transaction in question is that he became, in equity, a trustee of the legal title for her use, which she was entitled to have conveyed to her on payment of the $471 and interest thereon. Her possession thereafter was subordinate to his rights as the holder of the legal title, and was in no sense whatever adverse, nor is there the slightest testimony to show that it became hostile or adverse at any time prior to the commencement of the action, so as to operate as a bar to the enforcement of Phelan's title. There can be no doubt but that the transaction was, in substance, a loan of the money, and the taking of the title by Phelan in the manner described constituted an equitable mortgage on the premises for its repayment. It is well settled that whenever property is transferred, no matter in what form or by what conveyance, as mere security for a debt, whether from the debtor or from some other person at his request, the person to whom the transfer is made takes merely as a mortgagee, and has no other rights or remedies than the law accords to mortgagees. *Schriber v. Le Clair*, 66 Wis. 579. And so, also, where the owner of the equity of redemption procures another to advance money to bid in his property on sheriff's sale, and take a title thereof for the benefit of such owner, with the understanding that he will reconvey the same to him on repayment of the money so advanced, the transaction, in equity, constitutes a mortgage. *Hoile v. Bailey*, 58 Wis. 448; *Swift v. State L. Co.* 71 Wis. 476. The sheriff's deed to Phelan operated as a conveyance of the title of all the parties to the judgment of foreclosure under which it was made, and had the effect of a quitclaim

deed to Phelan for the purpose of obtaining a loan of the
$471, and this action is founded on the deed, a sealed in-
strument, in order to give it, as between the plaintiffs and
*Mrs. Fitzpatrick*, the effect of an equitable mortgage; and,
so far as the defense that the plaintiffs' remedy to foreclose is
barred by the statute of limitations is concerned, if applica-
ble, the case is governed by the bar of twenty years, under
subd. 1, sec. 4220, R. S. Until the sheriff's deed was executed,
November 17, 1871, *Mrs. Fitzpatrick* or either of her code-
fendants had a perfect right to redeem from the foreclosure
sale. The cause of action in this suit did not accrue until after
the execution and delivery of that deed, which was about
eight months less than twenty years before this action was
commenced, and therefore this defense, if applicable, wholly
fails. The letters offered in evidence, taken in connection
with the transaction to which they relate, amount to an
admission that the land was held as security for the pay-
ment of money, and, while they are not sufficient to re-
move the statute bar as to a personal liability against *Mrs.*
*Fitzpatrick*, they are available as evidence to show that
the relation of mortgagor and mortgagee existed between
the parties. *Heyer v. Pruyn*, 7 Paige, 465. The fact that
Phelan on April 10, 1877, and November 3, 1879, by the
direction and with the approval and consent of *Mrs. Fitz-*
*patrick*, sold and conveyed two parts or parcels of the
premises, the consideration being paid to her, is cogent evi-
dence of this relation between them. The common-law
presumption of payment arising from the lapse of twenty
years had not arisen when the action was commenced; and
*Mrs. Fitzpatrick*, in her testimony, limits her contention of
payment to the cross demand set up in the counterclaim,
which, it will be seen, cannot be sustained. Inasmuch as
there has been no denial of the relations that existed between
them as equitable mortgagor and mortgagee, she, at the
time this action was commenced, might have maintained a

Phelan and others vs. Fitzpatrick.

suit to redeem the land on paying the money; and the plaintiffs have a corresponding right to foreclose the equitable mortgage in order to collect the amount due. The case of *Spear v. Evans*, 51 Wis. 42, shows that the contention of the defendant *Mrs. Fitzpatrick* that the action is barred by either the ten or twenty years statute cannot be maintained. But we do not think that either the ten or twenty years bar has any application to the case. There is an important difference between this equitable mortgage, where all the right the equitable mortgagor has left is a mere right to pay up or redeem, and a legal mortgage, which is not a title, but a security. Here the equitable mortgagee has the entire title. Her right of redemption may become barred by the statute, but she cannot get the legal estate again but by redeeming. Until redemption, it remains with the equitable mortgagee. *Mrs. Fitzpatrick* could not maintain a bill to redeem, and have the legal estate adjudged or conveyed to her, upon alleging and showing that the debt secured by the equitable mortgage had been barred by the statute, as an excuse for not tendering it or submitting to its payment. Although the debt may be barred by the statute, the plaintiffs are still entitled to a judgment of foreclosure and sale. *Bishop v. Douglass*, 25 Wis. 696; *Wiswell v. Baxter*, 20 Wis. 680; *Cerney v. Pawlot*, 66 Wis. 262.

2. The claims embraced in the counterclaim cannot be regarded as payment. They are but cross demands, which might have been applied as a payment by act of the parties or by the judgment of a court. The fact that *Mrs. Fitzpatrick* presented a claim against the estate of Martin Phelan, for the same matters, to the county court, and that after long and troublesome litigation she was allowed to recover the sum of only $944.95, which has been paid to her, is a conclusive answer to her counterclaim. The question as to the extent of her claim for the board and serv-

ices in question was adjudicated between the parties to that proceeding, and hence the judgment in that case is conclusive that she had no claim against Martin Phelan in excess of the sum awarded to her, and she is now estopped from claiming to the contrary.

3. The relation of creditor and debtor undoubtedly existed between Phelan and *Mrs. Fitzpatrick* in respect to the $471 advanced, and interest thereon. The contract between them raises a presumption that such personal obligation existed; and while the cases of *Musgat v. Pumpelly*, 46 Wis. 666, and *Hoile v. Bailey*, 58 Wis. 448, support this conclusion, and although no time was specified within which the $471 was to be repaid, yet it was, in effect, payable on demand, and the principal sum would bear interest at the lawful rate. The demand was a liquidated one, and was not, therefore, within the rule of *Marsh v. Fraser*, 37 Wis. 149, and other cases cited by appellant's counsel. It is, however, obvious that the right of plaintiffs to insist upon a personal judgment against *Mrs. Fitzpatrick* for the principal sum or any part thereof has been barred by the six years statute of limitations. The letters relied on to take the personal liability out of the six years statute are wholly insufficient for that purpose, within the rule in *Pierce v. Seymour*, 52 Wis. 272. The first one contains no acknowledgment whatever of the debt, and she claims in it that it had been paid long before, and it does not contain an unqualified promise to pay it. The second letter is still more unsatisfactory. It does not contain any acknowledgment of any specific debt. For this reason no judgment for deficiency could properly be rendered, and the judgment of the circuit court, in that respect, is erroneous.

4. The judgment properly provided for a sale of the premises in question, instead of a strict foreclosure; but upon an examination it appears to be wholly insufficient to protect the rights of the defendant *Mrs. Fitzpatrick* in case

Washburn vs. Chicago, St. Paul, Minneapolis & Omaha R. Co.

she should pay the amount adjudged due. There is no method under it by which she can save the land without being subjected to the costs and delay of a sheriff's sale under the judgment. The legal title to the premises being vested in the heirs of Martin Phelan, the judgment should have provided for a conveyance from them to *Mrs. Fitzpatrick* upon payment of the judgment, or in lieu thereof the court should have adjudged that in that event the legal title to the premises be passed to and vested in her. For these reasons the judgment must be reversed and the cause remanded with directions to enter a new judgment of foreclosure and sale for the amount found due, with proper provisions to assure to *Mrs. Fitzpatrick* the title to the premises in case she pays it, and without any judgment, or provision for any, against her for any deficiency that may remain after a sale of the mortgaged premises.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded with directions to enter judgment accordingly.