Bullock v. Power-Heafey Coal Co.

---

H. E. BULLOCK, APPELLEE, V. POWER-HEAFEY COAL COMPANY, APPELLANT.

FILED APRIL 16, 1915.  No. 18054.

1. **Evidence: CONTRACT: DATE OF EXECUTION.** A contract reciting the date of its execution is *prima facie* evidence that it was executed at that time.

2. **Partnership: FIRM PROPERTY: APPLICATION TO INDIVIDUAL DEBTS.** In the absence of fraud or conduct constituting an estoppel, a partner, without the consent of his copartners, cannot apply firm property to the payment of his individual indebtedness.

3. **Trial: DIRECTION OF VERDICT.** It is not error to direct a verdict for plaintiff, where the evidence is sufficient to support his cause of action, but is insufficient to sustain the only defense pleaded.

APPEAL from the district court for Douglas county: WILLIS G. SEARS, JUDGE. *Affirmed.*

*Smyth, Smith & Schall,* for appellant.

*Brown, Baxter & Van Dusen, contra.*

ROSE, J.

This is an action to recover $1,783.95 for coal sold to defendant and delivered in Omaha, Nebraska. The fuel was furnished by Bullock & Hickey, a partnership having its place of business at Fort Smith, Arkansas. The firm was composed of H. E. Bullock and E. G. Hickey, but the former succeeded to the rights of both, and is plaintiff herein. It is admitted that Bullock & Hickey shipped the coal and that it was received by defendant, but the following defense is pleaded: Prior to May, 1911, Hickey was indebted to the Hart-Williams Coal Company in a sum exceeding $1,600. As surety, defendant incurred liability for the debt, and Hickey agreed to furnish coal to pay it. Plaintiff had consented to the arrangement thus made, and the coal was shipped and received with that understanding. The proceeds of the shipments were applied to the payment of the debt for which defendant had become liable as surety for Hickey. At the close of the testimony the trial court directed a verdict for plaintiff. From a judgment in his favor for $1,860.28, defendant has appealed.

Defendant contends that the evidence is sufficient to establish the defense pleaded, and that therefore there was error in the peremptory instruction for plaintiff. Is the evidence sufficient to sustain a finding that plaintiff consented to the payment of his partner's individual debt with partnership property? No witness testified that Bullock gave his consent to such an arrangement. There is no writing to that effect. Hickey intimated in his oral testimony that a purpose on his part to pay in coal an individual debt owing by him to defendant had been communicated to plaintiff, but proof of this character is inconsistent with a letter written by Hickey to Bullock. Is consent implied from proved facts or circumstances? In

testifying in regard to plaintiff's knowledge, to the time it is said to have been obtained and to its relation to the partnership, Hickey, as a witness for defendant, in referring to plaintiff, said: "The only conversation I had with him was this one conversation. As to whether that was immediately before or immediately after signing the papers, I say I do not remember." The partnership contract is in the record, and error in admitting it is not shown. It recites its execution March 31, 1911. This is *prima facie* evidence of that fact. 4 Wigmore, Evidence, sec. 2520; 2 Chamberlayne, Modern Law of Evidence, sec. 1055; 1 Jones, Commentaries on Evidence, sec. 51; *Sinclair v. Baggaley*, 4 Mees. & Wels. (Eng.) *312; *McFarlane v. Louden*, 99 Wis. 620; *Hauerwas v. Goodloe*, 101 Ala. 162; *Leonard v. Fleming*, 13 N. Dak. 629. The presumption is not destroyed by other proof. Hickey's indebtedness to Hart-Williams Coal Company is evidenced by a note for $1,498.51, dated May 4, 1911. Defendant then became liable as indorser. Its manager testified he was told by Hickey, after the execution and indorsement of the note, that hard coal would be delivered to defendant to cover the indebtedness evidenced by the note to Hart-Williams Coal Company. The consent pleaded by defendant applied alone to hard coal. The first coal shipped was soft coal. It came from Bullock & Hickey. Defendant's manager admitted on the witness-stand that he knew where it came from shortly after it was received. The amount of capital to be contributed to the partnership business was $2,000, each partner to pay $1,000. The evidence is uncontradicted that Hickey paid no money, but that Bullock accepted his note for his share of the capital and agreed to allow him a salary of $125 a month. In the bill of Bullock & Hickey for coal shipped to defendant, the first item is dated May 11, 1911, and the last August 8, 1911. Plaintiff testified positively that he had no knowledge of Hickey's purpose to pay an individual debt with firm property, until after the coal had been delivered.

As already stated, there is no proof of a written or oral promise on the part of plaintiff to apply partnership prop-

erty to the payment of his partner's individual debt. The evidence tends to show that defendant's liability as an indorser was incurred long after plaintiff gave his alleged consent to the application of partnership property to the payment of the individual debt of his partner. Defendant, in buying and in receiving soft coal through Hickey, knew the seller was the firm of Bullock & Hickey. Considering that no cash was invested in the partnership business except $1,000 contributed by plaintiff, that Hickey's partnership note for $1,000 remained unpaid, and that the firm had obligated itself to pay Hickey $125 a month for his services, it is too much to assume, without proof, when all of the circumstances are considered, that plaintiff impliedly consented to turn over to a creditor of Hickey firm property worth more than $1,600. In making reference to some of the controlling facts of which there is proof, no item of evidence adduced by defendant has been overlooked. The issue is controlled by the rules: "That a partner cannot, without the consent of his co-partners, apply the firm property in satisfaction of his individual liabilities; and that the burden is cast upon the person receiving the property to prove either consent of the other partners or facts creating an equitable estoppel." *Columbia Nat. Bank v. Rice,* 48 Neb. 428.

Estoppel is not pleaded nor proved. Fraud is not shown. The evidence would not support a judgment in favor of defendant. The trial court made no mistake in directing a verdict for plaintiff.

AFFIRMED.

FAWCETT, J., not sitting.